IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MATTHEW HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:17-cv-01413 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| JUAN MARCOS GONZALEZ, et al., | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is a Motion to Dismiss (Doc. No. 84) filed by Detectives Hargrave and Harbin. Plaintiff filed a consolidated response to this motion and the other pending dispositive motions (Doc. No. 98), and Defendants filed a consolidated reply (Doc. No. 100). For purposes of this ruling, the Court considered only the portions of the consolidated response and consolidated reply that are applicable to Detectives Hargrave and Harbin. For the reasons stated herein, the Motion is **GRANTED**.

### I. FACTUAL BACKGROUND

Plaintiff's complaint brings multiple counts against several officers and the Metropolitan Government of Nashville and Davidson County ("Metro"). These claims are based upon four separate encounters with Metro officers. Only two of those encounters are relevant to this motion: one in September of 2017 involving Defendant Detective Hargrave and one in February of 2018 involving Defendant Detective Harbin.

**A.    September 2017 Incident with Detective Hargrave**

In September 2017, Plaintiff returned to his Nashville residence after residing out of state for several months. (Doc. No. 29 ¶ 35). While living elsewhere, he had leased his property to a

tenant. (*Id*. ¶ 35). After learning that the property had seemingly been abandoned, Plaintiff returned to the residence to find the property in a state of disrepair and many items, including home appliances, furniture, a car, and a bulldozer, missing. (*Id*. ¶¶ 35-37). Plaintiff reported the theft of these items to the police. (*Id*. ¶ 38) Plaintiff states that he made his report, despite reservations that the police would actually assist him, because Metro Nashville "has policies and customs that prevent citizens from initiating any criminal case without the consent of a police officer." (*Id*. ¶¶ 38-39).

Detective Joshua Hargrave ("Hargrave") was assigned to Plaintiff's case. (*Id*. ¶ 42). Plaintiff alleges that Hargrave was aware that Plaintiff was suing Metro Nashville for violations of his civil rights at the time he was assigned to the case. (*Id*.). Despite Plaintiff producing evidence of the theft, including text messages from the former tenant admitting to taking the bulldozer and statements of a neighbor who witnessed the tenant removing property from the residence, Plaintiff alleges that Hargrave refused to prosecute the thief. (*Id*. ¶¶ 40-44). Plaintiff states that Hargrave refused to act due to Plaintiff's pending lawsuits against Metro Nashville. (*Id*. ¶ 45).

**B.     February 2018 Incident with Detective Harbin**

In February 2018, Plaintiff alleges that a woman entered his property and slashed the tires of his vehicle. Plaintiff reported the vandalism, and Metro Nashville Detective Rodney Harbin ("Harbin") was assigned to the case.[1] (*Id*. ¶¶ 59-60). Plaintiff states that both he and a witness to the incident reported their observations to Harbin, but that Harbin blocked any prosecution of the vandal on a "pretextual basis." (*Id*. ¶¶ 60 – 63). Plaintiff alleges that Harbin blocked any action

---

[1]  Plaintiff's Amended Complaint identifies Detective Harbin as John Doe and states that Plaintiff was unable to obtain the police report identifying the detective by name. Defendant Harbin's Motion to Dismiss clarifies that he was the detective assigned. (Doc. No. 85 at 3 n. 2).

2

assisting Plaintiff because Harbin was aware of Plaintiff's pending lawsuits against Metro Nashville. (*Id*. ¶ 64-65).

Plaintiff filed this lawsuit alleging violations of his rights under 42 U.S.C. § 1983. The only claims brought against Detectives Hargrave and Harbin are: Count I for First Amendment retaliation and Count II for Fourteenth Amendment due process violations. These Defendants now move to dismiss the claims.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) [2]

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). However, if a Rule 12(b)(1) motion challenges subject matter jurisdiction based on the face of the complaint, as this one does, the plaintiff's burden is "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). A court evaluating this sort of facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction accordingly. *Gentek*, 491 F.3d at 330.

### B. Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), a court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion

---

[2] Despite their challenge to Plaintiff's standing, Defendants omit the standard of review for motions to dismiss under Rule 12(b)(1).

3

to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to Defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

**A. Standing**

As an initial matter, the Court must address the Defendants' contention that Plaintiff lacks standing to assert his First Amendment retaliation claim against them. The issue of standing is a threshold determination for the Court. *Kanuszewski v. Mich. HHS*, 927 F.3d 396, 405 (6th Cir. 2019). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

Article III of the Constitution limits the jurisdiction of federal courts to adjudication of "cases" and "controversies." U.S. Const., Art. III, § 2. Integral to the case or controversy requirement is the doctrine of standing – a plaintiff must show a "personal stake in the outcome of

4

the controversy as to … justify [the] exercise of the court's remedial powers on [their] behalf." *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1650 (2017)). "Standing requires Plaintiff to show 1) that they have suffered an injury-in-fact that was 2) caused by Defendants' conduct and that 3) this Court can likely redress the injury with a decision for Plaintiffs." *Kanuszewski* 927 F.3d at 405. At this stage, Plaintiff must do so by "clearly alleg[ing] facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotations omitted).

At issue here is the first element. "An Article III injury…requires the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "To allege the invasion of a legally protected interest, a plaintiff must show that the plaintiff has a right to relief if the court accepts the plaintiff's interpretation of the constitutional or statutory laws on which the complaint relies." *Id*.

The injury alleged by Plaintiff is that the Defendants retaliated against him by failing or refusing to prosecute the individual who stole from him and the individual who slashed his tires. As a legally cognizable injury, this allegation fails. The Supreme Court has held that "a citizen lacks standing the contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (collecting cases). This holding is based on the understanding that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Id*. Because Plaintiff cannot plausibly allege the invasion of a legally cognizable interest, he lacks standing to assert his claim of First Amendment retaliation against Detectives Hargrave and Harbin. Accordingly, Count I will be dismissed as to these Defendants.

## B. Qualified Immunity

Defendants also raise the affirmative defense of qualified immunity.[3] Qualified immunity is an "immunity from suit" available to government officials performing discretionary functions. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity protects government officials from civil damages "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Reich v. City of Elizabethtown, Ky.*, 945 F.3d 968, 977 (6th Cir. 2019) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Once raised by the defendant, the plaintiff bears the burden to show qualified immunity does not apply. *Id*. at 978.

Courts have recognized, however, that this inquiry is "a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). "To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that 'plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established right." *Id*. (quoting *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 562–63 (6th Cir. 2011)).

---

[3] Defendants invoke qualified immunity on Count I and Count II. The Court has determined that Plaintiff lacks standing on Count I. Accordingly, the qualified immunity analysis is concerned only with Count II.

6

Case 3:17-cv-01413 Document 102 Filed 03/31/22 Page 6 of 8 PageID #: 1545

1.   Fourteenth Amendment Due Process—State Created Danger

In Count II of his Amended Complaint, Plaintiff alleges that Defendants have violated his due process rights by creating a situation where he is vulnerable to attacks from third parties without official recourse. The general rule is that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process clause." *DeShaney v. Winnebago Cnty Dept. of Social Services*, 489 U.S. 189, 197 (1989). An exception to this general rule is the "state-created danger exception." *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). Under this exception "state officials may be found to have violated the substantive due process rights of people not within their custody when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harm's way." *Id*. (internal quotations omitted).

The Sixth Circuit has articulated a clear test for plaintiffs pleading claims of state-created danger:

> To show a state-created danger, plaintiff must show: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Williams v. City of Georgetown, Kentucky*, 774 F. App'x 951, 955–56 (6th Cir. 2019) (quoting *Cartwright*, 336 F.3d at 493).

Plaintiff alleges that these and other Defendants violated his due process rights under the state-created danger exception. He alleges that due their failure to prosecute third parties who act against him, Defendants have "establish[ed] an environment wherein [he] cannot defend his own home without being punished, and where criminals can instead harm him with the full blessing of the [Defendants]." (Doc. No. 29 ¶ 100). Under this exception, however, the action of the

7

Defendants "must be an affirmative act; failure to act is not an affirmative act under the state-created danger theory." *Wilson v. Gregory*, 3 F.4th 844 (6th Cir. 2021). Because all Plaintiff has alleged against these Defendants is a failure to act, he has made an insufficient showing under the standard and the state-created danger exception does not apply.

Absent an applicable exception, the Court returns to the general rule as stated in *DeShaney*. 489 U.S. at 197. Under these circumstances, Plaintiff fails to state a due process claim. Accordingly, the Detectives are entitled to qualified immunity on Count II.

### IV. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff lacks standing to assert his claims in Count I against these Defendants. The Court also finds that Defendants are entitled to qualified immunity on Count II. Accordingly, their Motion to Dismiss (Doc. No. 84) is **GRANTED** and Detectives Hargrave and Harbin are **DISMISSED** from this action.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE