# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **MATTHEW HOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 3:17-cv-01413** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE FRENSLEY** |
| **JUAN MARCOS GONZALEZ, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Officers responded to Plaintiff's address on two separate occasions based on 911 calls reporting fighting in the street. Both occasions ended in Plaintiff's arrest. Plaintiff brings claims against five police officers involved in these arrests, all current or former members of the Metropolitan Nashville Police Department ("MNPD"). He claims the officers lacked probable cause for the arrests, that they unlawfully arrested him in his home without a warrant, that the arrests were in retaliation for Plaintiff's having filed lawsuits against the police department and other officers, and that the officers' conduct constituted a state-created danger.

Now before the Court are two motions for summary judgment filed by the officers. (Doc. Nos. 129, 135). The first motion is by Officers William Durham and Juan Gonzalez concerning claims arising out of Plaintiff's arrest on October 27, 2016. (Doc. No. 129). In support of the motion, Officers Durham and Gonzalez filed a memorandum of law (Doc. No. 130), statement of undisputed material facts (Doc. No. 131), and supporting exhibits. The second motion for summary judgment is by Officers David Simmonds, David Smith, and David Moser arising out of Plaintiff's arrest on March 8, 2018. (Doc. No. 135). Officers Simmonds, Smith, and Moser also filed a memorandum of law (Doc. No. 136), statement of undisputed material facts (Doc. No. 137), and

supporting exhibits. Plaintiff filed a consolidated response in opposition to the motions (Doc. No. 152), and to the statements of undisputed material facts (Doc. No. 151). The two groups of Defendants filed separate replies. (Doc. Nos. 154, 155).

For the reasons stated herein, the motions for summary judgment will be **GRANTED**.

## I. BACKGROUND[1]

### A. October 28, 2016 Arrest

The night of October 27, 2016, Plaintiff was involved in an altercation with Jaron Bowden on the street near Plaintiff's home. (2016 SOF at ¶ 2). Two people called 911 to report the fight. (*Id.* at ¶ 1). Officers Durham and Gonzalez along with another officer who is not a party to this litigation, responded to the scene. (*Id.* at ¶ 4). They spoke with Mr. Bowden and Carly Kasch, who was also present. (*Id.* at ¶ 4). Mr. Bowden told the officers that he was a tenant living in the house owned by Plaintiff and that after Plaintiff refused to let him into the house to remove his things, he called the police. (*Id.* at ¶ 5; Durham Decl. ¶¶ 6-7; Gonzalez Decl. ¶¶ 6-7). Mr. Bowden said that while he was on the phone with the police, Plaintiff came out of the house, put him in a headlock, threw him to the ground, and smashed his phone on the ground. (*Id.*). Ms. Kasch corroborated Mr. Bowden's statement. (2016 SOF at ¶ 7). Officers Durham and Gonzalez observed visible injuries on Mr. Bowden and Mr. Bowden's smashed phone. (*Id.* at ¶ 6; Durham Decl. Doc. No. 131-6, ¶ 8; Gonzalez Decl., Doc. No. 131-7, ¶ 8; MNPD Incident Rept, Doc. No. 131-5). The officers spoke with Plaintiff who admitted that he had been in an altercation with Mr. Bowden.

---

[1] For ease of reference, the Statement of Material Undisputed Facts related to the incident on October 27, 2016, that was filed by Officers Durham and Gonzalez (Doc. No. 131), together with Plaintiff's Response (Doc. No. 151) is cited as "2016 SOF at ¶ __"; and the Statement of Material Undisputed Facts related to the incident on March 8, 2018, that was filed by Officers Moser, Simmonds, and Smith (Doc. No. 137), together with Plaintiff's Response (Doc. No. 151) is cited as "2018 SOF at ¶ __."

2

(2016 SOF at ¶ 8). The officers determined that Plaintiff was the primary aggressor and arrested him at his front doorway. (*Id.* at ¶¶ 9-11).

The night court magistrate found probable cause for Plaintiff's arrest on charges of simple assault and vandalism. (*Id.* at ¶ 13; Criminal Ct. file, Doc. No. 131-9). On August 7, 2017, a grand jury returned an indictment on both charges. (*Id.* at ¶ 16; Indictment, Doc. No. 131-9 at PageID# 1999-2001).

## B. March 8, 2018 Incident

In the early morning of March 8, 2018, the police received two more 911 calls reporting a fight between a man and a woman in the street at Plaintiff's residence. (2018 SOF at ¶¶ 1, 5). The dispatch operator notified officers of an assault in progress and described the incident as involving a male beating on a female in the street. (*Id.* at ¶ 2). The emergency was assigned a "Code 2," which indicates that the situation is urgent, and officers should proceed directly to the scene. Officers Simmonds, Smith, and Moser responded to the scene. The dispatcher notified the responding officer that the resident at that address, Plaintiff Matthew Howell, has in the past been violent and hostile toward police and first responders, possesses multiple firearms, including an assault rifle, and that he suffers from post-traumatic stress disorder (PTSD). (*Id.* at ¶ 3).

When the officers arrived on the scene, they found the victim, Amber Martocci, standing in the street; she was crying and very upset. (*Id.* at ¶ 6). The officers state that they observed a scratch on Ms. Martocci's neck, her split lip, bruising on her knee and bite marks on either side of her tongue. (*Id.* at ¶ 8). The officers claim Ms. Martocci told Officer Simmonds that she and Plaintiff were in a romantic relationship and had gotten into an argument while lying in bed; that Plaintiff grabbed her by the throat, picked her up, and slammed her to the ground, then grabbed her by her shirt causing her to fall. (*Id.* at ¶ 7). This resulted in the scratch to her neck, bites to her

3

tongue, and a split lip. (*Id*.). The officers state that Ms. Martocci told them that Plaintiff followed her outside when she left the house and that they continued to argue. (*Id*.).

Plaintiff disputes this account of the events. Plaintiff claims Ms. Martocci did not have any injuries except for a scratch to her neck and that she was "noticeably under the influence." ((Pl. Decl., Doc. No. 151-1, ¶¶ 8-9). He also points to an affidavit signed by Ms. Martocci on April 9, 2018, in which she claims not to have told the officers that Plaintiff assaulted her and that "the statements made in the reports are lies." (*See* Martocci Aff. (April 9, 2018), Doc. No. 151-4). But Ms. Martocci later recanted the 2018 affidavit. (*See* Martocci Decl. (Aug. 26, 2024), Doc. No. 138). She stated that she did, in fact, tell officers that Plaintiff grabbed her by the throat, picked her up, and slammed her to the ground. (*Id*. at ¶ 4). She explained that the earlier affidavit was not written by her and that her signature was "procured under threat by [Plaintiff]." (*Id*. at ¶ 5). Defendant has not offered any evidence to refute Ms. Martocci's testimony. Accordingly, the Court finds no disputes of material fact with regard to what Ms. Martocci told the officers.

The remaining facts are undisputed. Ms. Martocci declined shelter and indicated that she wanted to stay at the house, which is where she was living. (2018 SOF at ¶¶ 9-10). While Officer Simmonds took Ms. Martocci's statement, Officer Smith observed Plaintiff "pacing wildly back and forth from room to room in his house." (*Id*. at ¶ 11). Another woman briefly stepped outside of the house and told Officer Smith that while she was not entirely sure what happened, she had heard Ms. Martocci shouting and claiming she was assaulted. (*Id*. at ¶ 12). The woman believed this was because Ms. Martocci was high and Plaintiff wanted her to go to rehab. (*Id*.). Before returning to the house, the woman told the officers that Plaintiff was willing to speak with them. (*Id*.). When Officer Smith commented that Plaintiff seemed "quite agitated," the woman responded that Plaintiff was a Marine with PTSD, but she claimed he was "calm at the moment." (*Id*.).

4

Officers Simmonds and Smith spoke with Plaintiff through the open front door. (*Id*. at ¶ 13). Plaintiff stood just inside the threshold of the doorway, and the officers stood on the front step a couple of feet away from him. (*Id*.). The officers observed that Plaintiff was agitated, speaking loudly and rapidly and using profanity, and hostile about their presence. (*Id*. at ¶¶ 14-15; Video 2, Doc. No. 153). He was very animated with his hands, had an aggressive stance, and ranted about being retaliated against by the Metropolitan Government. (*Id*.). He became more agitated the more he spoke. (*Id*.). Plaintiff told the officers that he was a former Marine, that he was a sick veteran, and that he did not have all of his medication. (*Id*.).

Several other people in the house were watching and listening to the officers' conversation with Plaintiff. (2018 SOF at ¶ 16). Officer Simmonds requested that they step outside so he could get their statements. (*Id*.). Plaintiff said he did not want them to leave, and he refused to come outside to speak with the officers. (*Id*.). After stepping back to discuss the situation, the officers returned to the front step, and Plaintiff opened the door. The door was wide open, and Plaintiff was again standing just inside at the threshold of the doorway. (*Id*. at ¶ 18). All three officers then stepped into the entryway of Plaintiff's home and arrested him. (*Id*. at ¶¶ 17, 19). They did not have a warrant to arrest Plaintiff or to search his home. (*Id*. at ¶ 17).

After a hearing, the General Sessions Court of Davidson County, Tennessee, found probable cause for Plaintiff's arrest. (*Id*. at ¶ 21). On June 11, 2018, the Grand Jury returned an indictment on the domestic assault charge. (*Id*. at ¶ 23). On April 30, 2020, Plaintiff voluntarily entered a "best interest" or Alford plea and was sentenced to 11 months, 29 days probation. (*Id*. at ¶ 24; Plea Agreement, Doc. No. 135-7).

5

Plaintiff brings claims against the officers involved in the October 2016 and March 2018 arrests.[2] (Amended Complaint, Doc. No. 29). He claims they violated the Fourth Amendment by arresting him on each of those occasions without probable cause (Count III) and arresting him in his home without a warrant (Count IV). (*Id*. at ¶¶ 103-114). He claims both of his arrests were in retaliation for Plaintiff's prior lawsuits against MNPD for prior instances of alleged misconduct (Count I).[3] (*Id*. at ¶¶ 88-93). And he also claims Officers Gonzalez and Durham violated his due process rights on a "State-Created Danger" theory in which he asserts his October 2016 arrest "established an environment wherein [he] cannot defend his own home without being punished." (*Id*. at ¶¶ 99-100). The Officers seek summary judgment on all claims and raise the defense of qualified immunity.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence

---

[2]    Plaintiff also asserted claims against the Metropolitan Government of Nashville and Davidson County, Tennessee and MNPD Detectives Joshua Hargrave and Rodney Harbin. (Amended Complaint, Doc. No. 29). Those claims have been dismissed. (*See* Orders, Doc. Nos. 103, 112).

[3]    Plaintiff sued Metro Nashville and several police officers after they arrested and charged him with assaulting a former housemate in December 2014. *See Howell v. McCormick*, No. 24-5570, __ F.4th __, (6th Cir. Aug. 25, 2025). When Plaintiff was arrested in October 2016 and March 2018, that case was pending. It has now been dismissed in its entirety. *See id*.

6

of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question for the finder of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the finder of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

"The trial court may, however, exercise a sound discretion in denying summary judgment where, although the movant may have technically shouldered his burden, the court is not reasonably certain there is no triable issue of fact; where a portion of an action may be ripe for summary judgment but is intertwined with another claim(s) that must be tried; and in certain other situations." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (quoting 6 *Moore's Federal Practice* ¶ 56.15[8] (2d ed. 1985)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that it trial courts may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial") (citing *Kennedy v. Silas Mason Co.,* 334 U.S. 249 (1948)).

## III.    QUALIFIED IMMUNITY

"Qualified immunity protects officials who must make split-second decisions while protecting the public." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022). "Officers are entitled to qualified immunity unless they (1) violated a constitutional right (2) that was 'clearly established' at the time of the wrongdoing." *Id*. (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once raised by the defendant, the plaintiff bears the burden to show qualified immunity does not apply. *Reich v. City of Elizabethtown, Ky*., 945 F.3d 968, 978 (6th Cir. 2019).

To show that the right was clearly established, the plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional. *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022) (citing *Cunningham v. Shelby Cty*., 994 F.3d 761, 765 (6th Cir. 2021). In addition, the caselaw identified by the Plaintiff must be from a published decision of the Sixth Circuit or the Supreme Court. *Id*. at 368 (noting that the case cannot place the constitutionality of certain conduct "beyond debate" if it doesn't even bind future Sixth Circuit panels). Finally, and logically, because the case must have provided notice to officers about the illegality of specified conduct, the published decision must have preceded the conduct at issue. *See Sumpter v. Wayne Cty*, 868 F.3d 473, 486 (6th Cir. 2017) (finding that cases decided after the events at issue "could not have put the defendant on notice that her conduct was unconstitutional").

## IV.    ANALYSIS

### A.  False Arrest

Plaintiff contends Defendants violated his constitutional rights when they arrested him for assault and vandalism on  October 27, 2016, and for domestic assault on March 8, 2018, because the arrests were without probable cause. The Sixth Circuit recently decided another case brought

8

by Plaintiff after he was arrested following an altercation with a different former tenant. *Howell v. McCormick*, 148 F.4th 834 (6th Cir. 2025). Plaintiff also claimed those officers violated the Fourth Amendment by arresting him without probable cause. The Sixth Circuit found the officers were entitled to qualified immunity. In so doing, the Court provided a thorough discussion of the law concerning warrantless arrest which the Court finds helpful to repeat here:

> [O]fficers may make warrantless arrests if they have probable cause to believe that a suspect committed a crime. *See United States v. Watson*, 423 U.S. 411, 414–24 (1976). And officers need not surmount a "high bar" to establish this probable cause. *Wesby*, 583 U.S. at 57, (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). They need to show only "a probability or substantial chance of criminal activity[.]" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)).
>
> When does this probable cause exist based on an eyewitness's firsthand account that a suspect committed a crime? We have long held that this evidence alone generally can establish the probable cause required to arrest the suspect. *See Farris v. Oakland County*, 96 F.4th 956, 963 (6th Cir. 2024); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). To show otherwise, a suspect must point to evidence that would have led reasonable officers to believe that the eyewitness was lying or mistaken. *See Wesley v. Campbell*, 779 F.3d 421, 429–30 (6th Cir. 2015). And a suspect's mere denial generally will not suffice to satisfy this burden. *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024). Rather, the officers can credit the eyewitness's account over the suspect's competing narrative. *See Farris*, 96 F.4th at 964. That rule makes sense because probable cause does not require the same amount of evidence that the government must produce to get a conviction at trial. *See Fisher*, 91 F.4th at 425.

*Howell*, 148 F.4th at 848-49.

1. October 2016 Arrest

Here, officers arrested Plaintiff for assault (Tenn. Code Ann. § 39-13-101) and vandalism - $500 or less (Tenn. Code Ann. § 39-14-408). "[A] claim alleging an unconstitutional false arrest will fail as long as the officers had probable cause for *one* of these offenses." *Howell*, 148 F.4th at 849 (citing *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020)).

9

Durham and Gonzalez argue they had probable cause to arrest Plaintiff for assault and vandalism based on the circumstances at the time of the arrest. They point to the following facts in support of probable cause: (1) Bowden told police that Plaintiff assaulted him and smashed his phone; (2) Bowden told police that he was a resident of Plaintiff's home; (3) Kasch corroborated Bowden's statements; (4) the Police observed Bowden's injuries and smashed phone consistent with his statements; (5) the 911 call reporting two men fighting in the street corroborated Bowden's statements; and (6) Plaintiff admitted getting into an altercation with Bowden.

Plaintiff argues the officers lacked probable cause because he and others informed them that Bowden had moved out and because Plaintiff told them he was defending his property. Plaintiff argues the officers "could not rightly disregard [his] affirmative defense and arrest him." (Doc. No. 152 at 5). Plaintiff also claims he offered for the officers to review footage from his security cameras, but they refused, and they ignored that Plaintiff had scratches on his arm. (*Id*. at 6). Finally, Plaintiff argues that the officers should have disregarded Bowden's claim that Plaintiff broke his phone because they knew that Plaintiff could not have broken the phone "*while* Bowden was 'on the phone with police.'" (*Id*. at 7).

Plaintiff fails to show that there was not even a "substantial chance" that he assaulted Bowen and/or vandalized Bowen's cell phone. Beginning with the damage to the phone, Bowden told the officers that Plaintiff came at him, grabbed his phone, and threw it on the ground, destroying it. A witness confirmed this account and officers observed the destroyed cell phone. Plaintiff's attempt to discredit their statements by challenging the timing of the destruction of the phone may be enough to convince a jury that he did not commit vandalism, but it does not defeat the officers' finding of probable cause.

10

With regard to the assault charge, Section 39–13–101 of the Tennessee Code defines assault as either: "(1) Intentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39–13–101. Plaintiff does not argue that his conduct did not fall within any of the definitions of assault set forth above. Instead, he argues the officers ignored evidence that Bowden had moved out or was kicked out and was therefore trespassing, and that Plaintiff had a right to protect his property under Tenn. Code Ann. § 39-11-614. (Doc. No. 152 at 4). Plaintiff contends the officers' knowledge of this affirmative defense negates probable cause. (*Id.* (citing *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)).

The case relied upon by Plaintiff does not stand for the proposition that knowledge of an affirmative defense negates probable cause. In fact, the Sixth Circuit has said that an affirmative defense does not necessarily negate probable cause, but instead provide "good defenses at trial." *Howell*, 148 F.4th at 850. In *Estate of Dietrich*, the case relied upon by Plaintiff, the court did not hold that knowledge of an affirmative defense was sufficient to negate probable cause. *See* 167 F.3d at 1012. In that case, the Court held that probable cause did not exist at the time of an arrest when "the officers … had full knowledge of facts and circumstances that *conclusively established*" an affirmative defense. *Id.* (emphasis added).

Plaintiff does not identify facts that "conclusively establish" that he was justified in assaulting Bowden to defend his property. Under the Tennessee statute, "an owner of property may use that force which is immediately necessary to prevent or terminate a trespass on the land

or unlawful interference with the property."[4] *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998); Tenn. Code Ann. § 39-11-614. The statutory defense requires a showing not only that the person against whom force was used was trespassing, but also that the force used was immediately necessary to prevent or terminate a trespass. Given that Bowden was believed to be a tenant (based on the statements of Bowden and a witness who also leased space from Plaintiff), and Plaintiff was fighting in the street with Bowden (i.e. off Plaintiff's property), Plaintiff's claim of defense of property was not conclusively established at the time of arrest.

Finally, Plaintiff argues that officers did not have probable cause for arrest because they did not look at surveillance camera footage before they arrested him. (Doc. No. 152 at 6 (citing *Gardenshire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)). Although Plaintiff refers to the video as "exculpatory" in his memorandum, he does not point the court to any evidence that the video was, in fact, exculpatory – *i.e.,* that it would have shown that someone else destroyed Bowden's phone and pushed him to the ground. Plaintiff's Declaration states only that he "told Gonzalez and Durham about [his] surveillance cameras and asked them to check the video, but they refused." (Doc. No. 151-1 at ¶ 5). The surveillance video is not in evidence. These facts do not show that the officers ignored exculpatory evidence.

Because Plaintiff has not shown the violation of a constitutional right or that the right was clearly established, Officers Durham and Gonzalez are entitled to qualified immunity on this claim.

---

[4]     Tenn. Code Ann. § 39-11-614 provides: "A person in lawful possession of real or personal property is justified in threatening or using force against another, when and to the degree it is reasonably believed the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property."

2. <u>March 2018 Arrest</u>

Plaintiff argues Officers Simmonds, Smith, and Moser lacked probable cause to arrest him for domestic assault on March 8, 2018. The officers argue that the arrest was supported by probable cause and that, irrespective of probable cause, Plaintiff's plea of guilty to the domestic assault charge forecloses any claim for false arrest.

"The law is well-settled that pleading guilty precludes a subsequent assertion of lack of probable cause for the underlying arrest." *Pye v. Hadley*, No. 1:17-CV-00071, 2018 WL 6579192, at *2 (M.D. Tenn. Oct. 3, 2018) (citing *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988)) (finding plaintiff's best interest plea precluded him from asserting a lack of probable cause for his underlying arrest, and dismissing his Section 1983 claims on that basis), report and recommendation adopted, No. 1:17- CV-00071, 2018 WL 6573423 (M.D. Tenn. Dec. 13, 2018). In *Walker v. Schaeffer*, 854 F.2d 138 (6th Cir. 1988), the Sixth Circuit held that the plaintiffs' no contest pleas to the criminal charges against them estopped them from asserting in a Section 1983 action that the defendant officers lacked probable cause to arrest them for the charged offenses. *Id.* at 141-44. Since *Walker*, courts have routinely found that a plaintiff's guilty plea estops him from bringing a § 1983 action to challenge an arrest for the offense on which his conviction is based. *See, e.g.*, *Daubenmire v. City of Columbus*, 507 F.3d 383, 390 (6th Cir. 2007); *Fox v. Mich. State Police Dep't.*, 173 F. App'x 372, 378 (6th Cir. 2006); *Cunningham v. Sisk, 136 F. App'x* 771, 774 (6th Cir. 2005); *Hemphill v. Haglund*, 45 F. App'x 519, 520 (6th Cir. 2002); *Nicholson v. City of Westlake*, 20 F. App'x 400, 402 (6th Cir. 2001).

The fact that the plea was an *Alford* plea does not affect this outcome. An *Alford* plea is simply "a guilty plea entered by a defendant who either: 1) maintains that he is innocent; or 2) without maintaining his innocence, 'is unwilling or unable to admit' that he committed 'acts

13

constituting the crime.'" *United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995) (*quoting North Carolina v. Alford*, 400 U.S. 25 (1970)). "An *Alford*-type guilty plea is a guilty plea in all material respects." *Id.* at 11.

Regardless of the guilty plea, the officers had ample probable cause to arrest Plaintiff for domestic assault. In Tennessee a domestic assault is defined as "intentionally, knowingly, or recklessly causing bodily injury to a person that one lives with or has lived with." Tenn. Code Ann. § 39-13-111(a)(2), (b).

Officers Simmonds, Smith, and Moser argue the following facts support a finding of probable cause to arrest Plaintiff for assault: (1) the officers responded to a 911 call about a male beating a female in the street; (2) the victim told officers that Plaintiff, who was her romantic partner, grabbed her by the throat scratching her neck, picked her up and slammed her to the ground causing her to hit her head and bite her tongue, and grabbed her by the shirt causing her to fall on a piece of furniture and split her lip; (3) officers observed that the victim was crying and very upset, and had visible injuries to her neck, bite marks on either side of her tongue, bruising on her knee, and a bleeding split lip; (4) the victim's injuries were consistent with her statement and with a domestic assault; (5) Plaintiff denied assaulting the victim and stated she had ripped off his shirt; and (6) the officers did not observe any visible injuries on Plaintiff.[5] (Doc. No. 136 (citing ¶¶1-2, 6-8, 16-17, 20; Prelim. Hrg Tr. at 9, 21; Simmonds Dep. at 11; Smith Dep. at 14).

Plaintiff argues the officers lacked probable cause because the victim was intoxicated, and she was "clearly lying." In support of the assertion that the victim was lying, Plaintiff points to an

---

[5]     Plaintiff agrees that "[t]he only injury officers observed on Plaintiff was a small abrasion on the side of his face that was scabbed over and did not appear to be a recent injury. (¶ 20).

affidavit signed by the victim weeks after the arrest in which the victim states that she never told police that she was hit or struck and that the scratch on her neck was from their active sex life. (*See* Doc. No. 151-4). The victim later recanted this affidavit. (Doc. No. 138). Citing only his own declaration prepared for this litigation in which he states that the victim had no injuries except a scratch on her neck that Plaintiff contends was an old injury, Plaintiff also argues there is a factual dispute over whether the victim was injured. (Doc. No. 152 at 14 (citing Howell Decl. ¶ 8)).

As an initial matter, the Court notes that Plaintiff argues both that Ms. Martocci was "clearly lying" when she told officers that Plaintiff assaulted her *and* that she never told the officers that Plaintiff assaulted her. At least one of these things cannot be true. Ms. Martocci's September 2024 Declaration explains that the untruth is that she never told officers Plaintiff assaulted her. (*See* Doc. No. 138).

An eyewitness's firsthand account that a suspect committed a crime can establish probable cause required to arrest the suspect. *Howell*, 148 F.4th at 849 (citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). To show otherwise, a suspect must point to evidence that would have led reasonable officers to believe that the eyewitness was lying or mistaken. *Ahlers*, 188 F.3d at 370. Here, Plaintiff has not pointed to evidence that would lead reasonable officers to believe the victim was lying even if she was intoxicated, particularly where her statement was consistent with her injuries (the injury to her neck is undisputed), the 911 calls, and other observations at the scene. This evidence is sufficient to show a "substantial chance" Plaintiff committed domestic violence. Because the officers had probable cause to arrest Plaintiff for domestic assault and he ultimately pled guilty to the charge, Plaintiff's false arrest claim fails.

Even if Plaintiff were to eke out a claim of false arrest, he has not shown that the law was clearly established at the time of the arrest that probable cause could not be found under these

15

circumstances. The case relied upon by Plaintiff is *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). In that case, the court explained that "[a]n eyewitness identification will constitute sufficient probable cause 'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation.'" *Id.* (internal quotations omitted). In *Ahlers*, there was no evidence that the eyewitness identification was untruthful or unreliable. Although, Plaintiff contends there is reason to disbelieve Ms. Martocci, nothing in the holding of *Ahlers* would alert an officer that reliance on her statement, particularly when it was corroborated by other evidence, would violate clearly established constitutional rights.

For these reasons, Officers Simmonds, Smith, and Moser are entitled to qualified immunity on the false arrest claim.

## B. Warrantless Entry

Plaintiff claims officers violated his Fourth Amendment rights when they entered his house without a warrant and arrested him on October 27, 2016, and March 8, 2018. The Sixth Circuit's recent decision in *Howell v. McCormick* considered the same claim brought by Plaintiff under similar circumstances. *Howell*, 148 F.4th at 843-48. There, Plaintiff claimed MNPD officers violated his Fourth Amendment rights when they entered his house without a warrant and arrested him for assaulting his former tenant. In that decision, the Sixth Circuit provided a thorough discussion of the law concerning warrantless entry which the Court repeats here:

> The Fourth Amendment protects a person's "house[]" from "unreasonable searches[.]" U.S. Const. amend. IV. Because the home sits at the "core" of the Amendment's protections, *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (citation omitted), officers generally must obtain a warrant from a neutral magistrate before they may cross its threshold, *see Lange v. California*, 594 U.S. 295, 301 (2021). This requirement applies no matter the reason for the entry. Officers thus typically must obtain a warrant if they want to enter a

16

home to arrest a suspect—even when they have probable cause to believe that the suspect committed a crime. *See Payton v. New York*, 445 U.S. 573, 576, (1980). And they typically must obtain a warrant if they want to enter a home to search for contraband—even when they have probable cause to believe that the home contains the contraband. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). In short, warrantless entries into a home presumptively violate the Fourth Amendment. *See id*.

But this rule comes with exceptions. The Fourth Amendment's text prohibits only "unreasonable searches and seizures," and not every warrantless entry into a home can be described as unreasonable. *See Caniglia v. Strom*, 593 U.S. 194 (2021). Most commonly, officers need not obtain a warrant if "exigent circumstances" require them to enter the home immediately without taking the time necessary to track down a judicial officer. *Lange*, 594 U.S. at 301. Different factors can create these exigent circumstances. Perhaps the officers fear for the safety of individuals trapped in the home. *See Caniglia*, 593 U.S. at 198; *Brigham City*, 547 U.S. at 406. Or perhaps they fear for their own safety from a potentially dangerous suspect barricaded inside. *See Lange*, 594 U.S. at 301. Or maybe the officers fear that the homeowners will destroy evidence of a crime hidden there. *See Kentucky v. King*, 563 U.S. 452, 460 (2011).

What evidence suffices to create these exigencies? Like most questions under the Fourth Amendment, this exigent-circumstances question triggers a fact-specific test that evaluates whether an emergency existed from the perspective of a reasonable officer. *See id*. at 464. So the officers' subjective reasons for entering the home do not affect the validity of the entry. *See Brigham City*, 547 U.S. at 404; cf. *Whren v. United States*, 517 U.S. 806, 813 (1996). And when deciding whether an emergency existed, courts must objectively consider the totality of the circumstances from just before the entry. *See Lange*, 594 U.S. at 301–02.

The government bears the burden to prove these exigent circumstances. *See Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). When considering whether it has met this burden at the summary-judgment stage, [the court] must resolve all evidentiary disputes about the historical facts in the light most favorable to the nonmovants (typically, the plaintiffs). *See Gambrel v. Knox County*, 25 F.4th 391, 404 (6th Cir. 2022). Once we determine these facts, we are left with the "ultimate" or "mixed" question: did the facts rise to the level required to create exigent circumstances? Our cases have long treated this question as one reserved for the jury in civil suits. *See Jones v. Lewis*, 874 F.2d 1125, 1130 (6th Cir. 1989) (per curiam); *see also Reed v. Campbell County*, 80 F.4th 734, 743 (6th Cir. 2023); *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). But we have added that (as with any question of historical fact) we may resolve this question at the

summary-judgment stage if a reasonable jury could give only one answer. *See Ewolski*, 287 F.3d at 501; *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992).

*Howell*, 148 F.4th at 844-45. With this legal standard in mind, the Court turns to the alleged unlawful entries.

### 1. October 2016 Arrest

Plaintiff contends his warrantless arrest at his front doorway violates his rights under the Fourth Amendment. Officers Durham and Gonzalez argue Defendant's warrantless arrest at his front door was constitutional because: (1) "he had no expectation of privacy while standing at his front door after officers spoke with him outside and then told him he was under arrest; (2) Plaintiff cannot defeat a valid arrest for a violent offense in a public place by retreating into his home; and (3) exigent circumstances justified his arrest. (Doc. No. 130 at 11).

The first questions is: Does it violate the Fourth Amendment to arrest a person for a misdemeanor offense(s) in the doorway of their home? Officers Durham and Gonzalez argue that it does not, pointing to *Coffey v. Carroll*, 933 F.3d 577, 585 (6th Cir. 2019), which relies upon *U.S. v. Santana*, 427 U.S. 38, 42 (1976). In *Santana*, the Supreme Court "upheld a warrantless entry into a home where the defendant, a suspect in an ongoing drug transaction, had been standing in the doorway with a brown paper bag in her hand, but had retreated into the vestibule as police officers pulled up to her house and shouted "police" while exiting their vehicle. *Santana*, 427 U.S. at 40, 43. The officers entered the house through the open door and arrested her. *Id*. The Court found that the officers' entry into the home was permitted under the "hot pursuit" exception to the warrant requirement and in light of the officers' "realistic expectation that any delay would result in destruction of evidence." *Id*. at 42–43. The *Santana* Court also found that because the defendant "was as exposed to public view" in the doorway of her house "as if she had been standing

18

completely outside her house," she was "not in an area where she had any expectation of privacy" 427 U.S. at 42. Noting that public warrantless arrests were permissible, the *Santana* Court reasoned that it would be anomalous to allow a suspect to evade a lawful public arrest (*i.e.* an arrest in the front doorway) simply by fleeing into a private residence. *Id*. See also *United States v. Corder*, 724 Fed. Appx. 394 (6th Cir. 2018) ("[*Santana*] held "the threshold to the defendant's home was 'public,' insofar as the defendant was 'exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house.' At that point in time it was proper to initiate a warrantless arrest."). Under *Santana*, the arrest of Defendant when he was "in the front doorway the whole time" does not violate the Fourth Amendment.

Even if arresting Plaintiff in his doorway was unlawful, Plaintiff has not shown that the constitutional violation was clearly established by pointing to legal precedent showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered. Plaintiff points to two cases: *United States v. Jones*, 565 U.S. 400 (2012), and *Florida v. Jardines*, 569 U.S. 1 (2013). *Jones* involved police attaching a GPS tracking device to a vehicle. *Jardines* held that a dog sniff on a front porch to a home is a physical trespass. The circumstances of Plaintiff's arrest did not involve a GPS tracker on a vehicle or a dog sniffing a front porch. Neither of these cases suggest that it is clearly established that officers may not effect a warrantless arrest in the open doorway of a person's home. In fact, *Jardines* affirms that "a police officer not armed with a warrant may approach a home and knock" at the front door, suggesting that the officers' entry on Plaintiff's property was not a trespass. 569 U.S. at 8 (citing *Ky. v. King*, 131 S. Ct. 1849, 1862 (2011)). The officers are, therefore, entitled to qualified immunity on this claim.

2. <u>March 2018 Arrest</u>

The officers argue that exigent circumstances – specifically, the "need to protect or protect or preserve life or avoid serious injury" – justify their limited entry into Plaintiff's home to arrest him just inside the threshold of the front door. (Doc. No. 136 at 23 (citing *Mincey v. Arizona*, 437 U.S. 385, 392 (1978)). Situations presenting a "risk of danger to the police or others" can constitute exigent circumstances justifying warrantless entries. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996); *see also Minnesota v. Olson*, 495 U.S. 91, 100 (1990); *United States v. Goins*, No. 22-1201, 2022 WL 17078875, at *2 (6th Cir. Nov. 18, 2022) (citing *Baker v. City of Trenton*, 936 F.3d 523, 531 (6th Cir. 2019)) ("[A]n officer's reasonable belief, based on the totality of the circumstances, that he needed to enter a residence to protect someone from harm warrants a finding of exigency.").

Considering the totality of the circumstances, a reasonable jury could find that the facts confronting officers on March 8, 2018, did not rise to the level required to create exigent circumstances. The officers were responding to a domestic disturbance call, which is inherently dangerous. They were alerted by dispatch that there was a "caution" for the address, that the Plaintiff had a history of violence and hostility toward first-responders, that Plaintiff possessed multiple firearms, including an assault rifle, and that he suffers from PTSD. When they arrived, they found a woman with visible injuries crying in the street. They could see Plaintiff "pacing wildly from room to room" inside the house. Another woman said she heard Ms. Martocci shouting and claiming she was assaulted. The woman confirmed that Plaintiff was a former Marine with PTSD. When officers approached the front door, Plaintiff was agitated and loudly ranting about a vendetta by local government. He refused to come outside or to allow the officers inside. Plaintiff told the officers that he was a Marine, that he was sick, and not currently taking his medication.

20

The officers observed several other people in the house. Plaintiff would not allow them to speak with the officers alone. The officers stated that they believed that waiting to obtain a warrant would unnecessarily risk the safety of Ms. Martocci, who wanted to return to the house, the other individuals in the house, and the officers present at the scene.

Standing alone, the facts identified above point toward a finding of exigency. But there are additional facts that could cause a reasonable jury to find otherwise. First, the victim was no longer inside the residence. Given the police presence, she was not likely at further risk of harm from the Plaintiff. Second, although the officers were not able to speak to everyone in the residence, one person spoke calmly with officers and did not indicate that she or others in the residence were at risk of harm from the Plaintiff. In fact, the resident described Plaintiff as "calm at the moment." Third, although the officers were informed there were firearms in the residence, the assault did not involve the use of a firearm, there was no specific information that Plaintiff had a firearm on his person or otherwise within reach, and Plaintiff did not threaten anyone with a firearm. *See Hoover v. Due*, __ F.4th __, No. 24-5666, 2025 WL 2658617, at *7 (6th Cir. Sept. 17, 2025) ("[t]he mere presence of firearms does not create exigent circumstances" … "[r]ather, the officers must have 'possessed information that the suspect was armed and likely to use a weapon or become violent.'"). Considering the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff was unlikely to become violent toward those inside the residence or the officers during the time it would take to obtain a warrant, and thus no exigency existed. Absent exigent circumstances, the warrantless entry violated Plaintiff's constitutional rights.

The next stage in the qualified immunity inquiry requires Plaintiff to show that the violated right was clearly established by pointing to legal precedent showing that reasonable officers would have known their actions were unconstitutional. *See Bell v. City of Southfield, Michigan*, 37 F.4th

21

362, 367 (6th Cir. 2022); *see also*, *Howell*, 148 F.4th at 846 (stating that to overcome the qualified-immunity defense, plaintiffs "must show that any 'reasonable officer' would have recognized the illegality of the entry" by identifying caselaw "answering this Fourth Amendment question") (citing *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)); *Hoover v. Due*, No. 24-5666, __ F.4th ___, 2025 WL 2658617, at * (6th Cir. Sept. 17, 2025) (plaintiff must show that "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful") (citing *Wesby*, 583 U.S. at 63).

How specific must the case law be? The Supreme Court has cautioned against defining the constitutional right at too high a level of generality. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The *Anderson* court held that the assertion of a general right – in that case the right to be free from warrantless searches of ones' home unless the searching officers have probable cause and there are exigent circumstances – was insufficient to show that it is clearly established that search was unlawful under the circumstances confronted by the officer. *Id*. at 640-41. The court held that a more particularized showing was required. *Id*. ("It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). The *Anderson* court reasoned that if the constitutional right is defined at too high a level of generality, "Plaintiffs would be able to convert the rule of qualified immunity … into a rule of virtually unqualified liability simply by alleging a violation of extremely abstract rights." *Id*. at 639.

The Sixth Circuit Court of Appeals has addressed the clearly established prong of qualified immunity with regard to claims for warrantless entry in two recent published decisions – *Howell*

22

*v. McCormick*, 148 F.4th 834 (6th Cir. Aug. 25, 2025); and *Hoover v. Due*, No. 24-5666, ___ F.4th ___, 2025 WL 2658617 (6th Cir. Sept. 17, 2025). Unfortunately for lower courts tasked with applying this standard, these decisions take different approaches. In *Howell*, the court stated that to prove the officers violated a clearly established right under the Fourth Amendment, the plaintiffs must identify precedent that "identifi[es] the legal rule that the officers violated with a 'high degree of specificity' to ensure that officers had notice that their conduct exceeded constitutional bounds." 148 F.4th at 846 (citing *Wesby*, 583 U.S. at 63). The *Howell* court concluded that specificity should be required in exigent circumstances settings, noting that specificity is required for other Fourth Amendment questions that require officers to consider all of the circumstances such as probable cause and excessive force. *Id*. In *Howell*, the court found the plaintiffs could not meet the "demanding standard" because they did not identify any caselaw answering the Fourth Amendment question, "[a]nd the lack of precedent about the 'specific conduct' at issue generally dooms a plaintiff's efforts to show that the conduct violated clearly established law." *Id*. (citing *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)). In reaching this conclusion, however, the *Howell* court foreshadowed the conundrum with which this Court is now confronted:

> To be sure, a separate line of our cases has sometimes rejected a qualified-immunity defense based on the clearly established nature of the general rule that warrantless entries into a home without exigent circumstances violate the Fourth Amendment. *See Reed v. Campbell Cty., Ky.*, 80 F.4th 734, 745–46; *Williams v. Maurer*, 9 F.4th 416, 437–38 (6th Cir. 2021); *Barton v. Martin*, 949 F.3d 938, 949–50 (6th Cir. 2020). These cases start by finding that a reasonable jury could conclude that no exigent circumstances existed on the facts presented. *See Reed*, 80 F.4th at 746. They next reason that, if a jury could find that no exigent circumstances existed, the court must accept that purported fact (or, more accurately, that mixed question of law and fact) as true when deciding whether the officers' conduct violated clearly established law. *See id*. They then hold that every reasonable officer would know that a warrantless entry without exigent circumstances violated the Fourth Amendment. *See id*. That said, in another exigent-circumstances case, we held that this rule (that warrantless entries presumptively violate the Fourth

23

Amendment) "frame[d] the issue at too high a level of generality." *Gradisher*, 794 F.3d 574, 584 (6th Cir. 2015); *see also Anderson*, 483 U.S. at 640–41, 107 S.Ct. 3034.

*Id*. at 847.

Just three weeks after the *Howell* decision, the Sixth Circuit followed exactly that path in *Hoover*. In that case, the court held that "[t]he right to be free from a warrantless entry into a home without an exception to the warrant requirement is clearly established." *Hoover*, 2025 WL 2658617, at *8. The court acknowledged, however, that it has required a higher level of particularity "on other occasions." *Id*. (citing *Gradisher*, 749 F.3d at 584). The *Hoover* court then explained that "even if it were necessary to define the right with greater particularity, [the defendant's] conduct would still violate clearly established law." *Id*. (identifying other case precedent). In a concurring opinion, Judge Murphy addressed difficulties presented by Sixth Circuit precedent regarding consideration of exigent circumstances and the specificity with which a right must be clearly established and suggesting that "it may be time to reevaluate that precedent in an appropriate case." *Id*. at *12-14 (Murphy, J., concurring).

This leaves the undersigned in the unenviable predicament of determining whether this is one of the occasions for which a higher level of specificity is required or one in which the general rule that warrantless entry without exigent circumstances violates the Fourth Amendment suffices. Unable to resolve this dilemma without further guidance from the Sixth Circuit, the Court returns to the burdens assigned to each party. Once Defendant has asserted the defense of qualified immunity, it is Plaintiff's burden to show that the constitutional right at issue was clearly established. *See Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367 (6th Cir. 2022) (requiring the plaintiff to show that the constitutional right is clearly established by pointing to a case showing

24

that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered).

It is axiomatic that warrantless entry without an exception to the warrant requirement violates the Fourth Amendment. But Plaintiff does not argue that he has shown the law was clearly established even at this high level of generality. (*See* Doc. No. 152 at 15-16). Instead, he argues that he did not present an ongoing danger to the victim and that there was no urgency for the victim to reenter the home to reclaim her belongings. (*Id*.). This may be true, but it does not address Defendant's assertion that they entered Plaintiff's home to arrest him out of fear for the safety of others in the home and the officers on the scene. Plaintiff cites *Clemons v. Couch*, 3 F.4th 897, 905-06 (6th Cir. 2021), to show that it was clearly established at the time of the alleged unlawful entry that officers cannot enter a home without a warrant to protect someone who is "afraid" "when the need for entry was not urgent."[6] (*See* Doc. No. 152 at 16). But that case, which involved an officer accompanying a person to a house to retrieve her belongings where delay was not "reasonably likely to result in injury or ongoing harm to the community at large," is factually and legally inapposite. At best, Plaintiff has shown that it was clearly established that it may have been unlawful for the officers to escort the victim into the house to retrieve her belongings without a warrant. As that is not the circumstance with which the officers or the Court is confronted and Plaintiff cites to no other authority showing that the officers' conduct violated a clearly established

---

[6] Plaintiff cites two additional cases that were relied upon by Defendants. (Doc. No. 152 at 17 (citing *Vangel v. Szopho*, 672 F. App'x 543, 547 (6th Cir. 2016), and *United States v. Goins*, No. 22-1201, 2022 WL 17078875 (6th Cir. Nov. 18, 2022)). But Plaintiff argues these cases are factually distinct from the circumstances presented here, not that they show that officers violated a clearly established right. Accordingly, the Court has not considered them as part of the clearly established prong of the qualified immunity analysis.

constitutional right, the Court finds that Plaintiff has failed to meet his burden to show that the officers' conduct violated a clearly established constitutional right, *i.e.*, that any reasonable officer would have recognized the illegality of the entry. Accordingly, the officers are entitled to qualified immunity on the warrantless entry claim based on the March 8, 2018 incident.

### C. First Amendment Retaliation

Plaintiff contends the Defendant Officers violated the First Amendment because the arrests were in retaliation for Plaintiff's having filed lawsuits against MNPD and other officers. ((Am. Comp., Doc. No. 29, at ¶¶ 88-91, 93). Because the officers had probable cause to arrest Plaintiff and he has not provided any evidence that he was arrested when other similarly situated individuals engaged in the same sort of protected speech had not been, this claim fails. *See Nieves v. Bartlett*, 587 U.S. 391, 402, 407 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest … [unless the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.").

### D. State-Created Danger

Plaintiff claims that when Officers Gonzalez and Durham arrested him for assault when he was protecting his property, they effectively aided and abetted Bowden in breaking into his home. (Doc. No. 152 at 11). Plaintiff contends that his arrest therefore deprived him of liberty and property without due process contrary to the Fourteenth Amendment under a theory of "state-created danger." (Am. Comp., Doc. No. 29, at ¶¶ 99-100). Plaintiff asserts that a "competent officer would have known not to do such a thing" and that a "reasonable jury could find that police knowingly violated clear law by helping Bowden break into the home." (Doc. No. 152 at 11).

26

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[B]y its terms, the Fourteenth Amendment regulates only the state's actions—not those of private actors." *Franz v. Oxford Comm. Sch. Dist.*, 132 F.4th 447, 451 (6th Cir. 2025). The Sixth Circuit and others recognize a theory of "state-created dangers," under which, under narrow circumstances, state actors may be liable for harms caused by private actors. *Id*. To establish liability on a theory of state-created danger Plaintiff must show the following: (1) an affirmative act by the state that creates or increases the risk that a victim will be harmed by a private actor; (2) that the risk poses a "special danger to a specific victim"; and (3) the state official's conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Franz v. Oxford Comm. Sch. Dist.*, 132 F.4th 447, 451 (6th Cir. 2025).

Officers Durham and Gonzalez argue Plaintiff cannot establish the first and third elements because they did not increase the risk of Bowden would damage Plaintiff's property and, under the circumstances, arresting Plaintiff for assault and vandalism does not "shock the contemporary conscience." In any event, because Plaintiff has not cited any caselaw showing that it was clearly established that the officers violated Plaintiff's rights under the Fourteenth Amendment when they arrested him (*see Pl. Resp. Br.*, Doc. No. 152 at 10-11), the officers are entitled to qualified immunity on this claim.

27

## V. CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment (Doc. Nos. (Doc. No. 129, 135) will be **GRANTED**. An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE